GROVER L. COVINGTON, Chief Judge.
The relator in this case was arrested at a roadblock set up by the Louisiana State Police Department and the West Baton Rouge Parish Sheriff’s Department to detect and arrest drunk drivers. Relator was charged with driving while intoxicated (DWI) in violation of La.R.S. 14:98. In advance of trial, he filed a motion to suppress all evidence gathered by the police pursuant to the roadblock stop, arguing that the use of the roadblock violated his constitutional rights. The motion to suppress was denied by the trial court. Relator filed an application for writ of review with this court, which was denied. He then filed a writ of certiorari with the Louisiana Supreme Court. It granted the writ and remanded the case to this court for briefing, argument and opinion, 501 So.2d 765.
On the night in question, a task force of seven men composed of state troopers and West Baton Rouge Sheriffs deputies operated a roadblock on Louisiana Highway 1 in West Baton Rouge Parish from 12:30 a.m. to 3:30 a.m. Each vehicle was stopped at the roadblock and the motorist’s driver’s license was checked. If the officer detected signs that the motorist was under the influence of intoxicants, the motorist was directed to a testing area.
As far as practicable, all vehicles which approached the roadblock were stopped. If the tests revealed intoxication of the driver, he was arrested.
At approximately 2:45 a.m., on the night in question, relator was stopped at the DWI roadblock. Upon detecting the odor of intoxicants, the police officer directed relator’s vehicle to the shoulder of the road. Relator’s eyes were bloodshot, his speech was slurred, and he swayed while standing. After being advised of his Miranda rights, Parms was given a field sobriety test. Thereafter, he submitted to a p.e.i. test, which resulted in a reading of .22 percent by weight.[1]
The question before this court is: did the roadblock meet the requirements of a constitutionally permissible seizure? The courts have established that the stopping of motor vehicles at roadblocks is a seizure within the Fourth and Fourteenth Amendments of the United States Constitution. United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). Therefore, the primary question is was the seizure in the instant case reasonable?
In Martinez-Fuerte, the Court upheld the use of a fixed roadblock (checkpoint) stop near the border of Mexico in order to search for illegal aliens entering this country. The Court indicated that the constitutionality of a “roadblock” must be determined by balancing the public interest being served by the practice at issue against the Fourth Amendment interests of the individuals which are interfered with by the practice. 428 U.S. at 554-555, 96 S.Ct. at 3081-82. The Martinez-Fuerte Court found that there was a great need for such a checkpoint to deter the smuggling of illegal aliens into the country; the potential interference with legitimate traffic was minimal; motorists were not taken by surprise due to the fixed nature of the checkpoint; and the checkpoint operations involved a minimum of unconstrained discretionary enforcement activity by the enforcement officers. On balance, the court found the governmental interests outweighed those of the private citizen under the circumstances.
In Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the Court held that the random stopping of motor *466 vehicles for the purpose of checking drivers’ licenses and vehicle registrations was constitutionally impermissible, unless based on specific articulable facts. The Court reasoned that although the state may have a legitimate interest in checking vehicular licensing and registration requirements to promote public safety upon its highways, this interest does not justify subjecting every occupant of every motor vehicle on the roads to a seizure. The contribution to roadway safety was viewed as marginal and the intrusion on privacy expectations was considered great. Nevertheless, the Court took care to state that its “holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative.” (Emphasis added.) 440 U.S. at 663, 99 S.Ct. at 1401. In the instant case relator argues that the seizure resulting from this roadblock stop is unconstitutional because the roadblock was implemented without necessary safeguards.
A comprehensive list of the factors to be evaluated when a temporary roadblock is implemented is found in State v. Deskins, 234 Kan. 529, 673 P.2d 1174 (1983). In Deskins, the court addressed the constitutionality of a roadblock set up by the local sheriffs office and police department for the purpose of checking drivers’ licenses and detecting persons driving under the influence of intoxicants. It listed a number of factors to consider in determining whether a DWI roadblock is constitutionally permissible, as follows:
(1) the degree of discretion, if any, left to the officer in the field;
(2) the location designated for the roadblock;
(3) the time and duration of the roadblock;
(4) standards set by superior officers;
(5) advance notice to the public at large;
(6) advance warning to an approaching motorist;
(7) maintenance of safety conditions;
(8) degree of fear or anxiety to motorists generated by the mode of operation;
(9) average length of time each motorist is detained;
(10) physical factors surrounding the location, type and method of operation;
(11) availability of less intrusive methods for combating the problem;
(12) degree of effectiveness of the procedure; and,
(13) any other relevant circumstances.
The Deskins court further explained that all of the factors need not to be favorable to the state in order for the roadblock procedure to be constitutionally permissible, but that all applicable factors should be considered by the courts. 673 P.2d at 1185.
Applying the listed factors in the Deskins case, the court held that the initial stop of the defendant and resulting search and seizure met minimum constitutional requirements. In Deskins, the police officers conducting the roadblock were previously briefed by supervisory personnel of the police department. The officers were specifically told to check for driver’s license violations and indications of drunk driving. A roadblock was established in a well-lighted area of a four-lane highway, with a police car flashing red lights located at each corner of the roadblock. The time of detention was minimal, unless violations were noted, and sufficient officers were present to assure minimum intrusion. All vehicles going in either direction, as far as practicable, were stopped and subjected to the police check. The officers in the field did not have discretion to choose which vehicle would be stopped. All were to be stopped. The officers were in uniform, readily recognizable police officers. The location was selected by supervisory personnel, not by the officers in the field. 673 P.2d at 1185.
The rationale of Deskins is persuasive in the instant case. In the case under consideration, the roadblock procedure utilized by the police officers was *467 implemented with a minimal amount of discretion exercised by the officers in the field. The location of the roadblock was decided by supervisors, and was reasonably based. All motorists, as far as practicable, were stopped by the roadblock. The roadblock was conducted on a Saturday during the early morning hours when traffic was relatively light and there was a probability that bar patrons would be going home. Lights were set up in the roadblock area to promote visibility. There was adequate space to process violators without creating a roadway hazard. There was an adequate number of police officers in uniform enforcing the roadblock. On only a few occasions were all of the officers occupied at the same time, so they were able to reasonably check all vehicles. The length of time that each motorist was detained was minimal and reasonable. In a three to three and one half-hour period, about ten DWI arrests were made. The checks and arrests were in no way arbitrarily selective or discriminatory.
We specifically find one of the factors listed by the Deskins court to be unnecessary and inconsistent with the purpose of this type of roadblock. Advance notice to the public at large as to the location of investigatory stops would only encourage the law violator to avoid area A, the roadblock, and go through area B, thus simply changing the geographical location of his potential victims. As for the requirement of advance notice to an approaching motorist, such a requirement would merely provide that a motorist be advised, for example by temporary, highly visible barricades or police cars, that he must stop, giving the driver ample time to stop safely in a safe, well-lit area, as was done in the instant case.
Arrest and removal of drunk drivers from our highways by means of reasonable roadblocks, such as this one, serve to advance the strong legitimate interest which the state has in public safety. Because of the safeguards and reasonableness of the procedures used, the interference with individual interests was minimal. Hence, we find the seizure pursuant to the roadblock utilized in this case was constitutionally permissible.
The decision of the trial court denying relator’s motion to suppress is affirmed.
AFFIRMED.
LeBLANC, J., dissents and assigns reasons.
ON REMAND AFTER DENIAL OF APPLICATION FOR WRIT OF REVIEW TO THE EIGHTEENTH JUDICIAL DISTRICT COURT, PARISH OF WEST BATON ROUGE, STATE OF LOUISIANA, NO. 861986, THE HONORABLE IAN W. CLAIBORNE, JUDGE PRESIDING.

. While perhaps not pertinent to the reasonableness of the stop, the degree of intoxication does have probative value when balancing the good done by defendant's removal from the highways against his right to privacy. The results of the test mandated his removal.